**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

**NIEL ATKINSON, in his capacity as trustee of the Kathleen M Atkinson Irrevocable Trust, on behalf of himself and all others similarly situated;**

**Plaintiff,**

**vs.**

**LINCOLN BENEFIT LIFE COMPANY,**

**Defendant.**

**4:26CV3097**

**MEMORANDUM AND ORDER**

Plaintiff filed this putative class action for breach of contract against Defendant, Lincoln Benefit Life Company ("LBL"), seeking to represent a nationwide class of individuals owning adjustable life insurance policies issued by LBL who were allegedly subjected to unlawful cost of insurance ("COI") rate overcharges. (Filing No. 1 at ¶¶ 1-2). LBL has moved to transfer the action to the Northern District of Illinois, (Filing No. 28), contending neither Plaintiff's claims nor the parties have any relevant connection to Nebraska. (Filing No. 29 at p. 9). In response to LBL's request to transfer, Plaintiff asserted he should be permitted to conduct venue-related discovery. (Filing No. 41).

The Court held a telephone conference with counsel for the parties regarding Plaintiff's request to conduct venue discovery, during which the parties reached some agreements. (Filing Nos. 45-46). However, the parties continued to disagree on the permissible scope of preliminary discovery, resulting in Plaintiff filing the instant Motion to Compel Venue Discovery (Filing No. 47). Plaintiff requests a Court order compelling LBL to produce documents and testimony Plaintiff contends is relevant to LBL's motion to transfer this action to the Northern District of Illinois. LBL counters that Plaintiff's motion to compel both improperly presumes a right to venue discovery and fails to demonstrate Plaintiff's entitlement to limited venue discovery, and that the discovery Plaintiff requests is merits-related and overbroad. (Filing No. 50 at pp. 6-7).

## BACKGROUND

Plaintiff filed his Complaint in this district against LBL on March 19, 2026. (Filing No. 1). Plaintiff is a resident of Minnesota, and is the trustee of the Kathleen M Atkinson Irrevocable Trust ("the Trust"). Plaintiff alleges LBL "is incorporated under the laws of the State of Nebraska and

has its principal place of business in Lincoln, Nebraska." (Filing No. 1 at p. 5). Plaintiff alleges LBL or its predecessors issued or assumed premium adjustable life insurance policies—also known as "universal life" policies—that were subjected to an "adverse change" in COI rates announced in or after 2024. (Filing No. 1 at pp. 1, 10). The Trust owns one such insurance policy ("the Policy"). (Filing No. 1 at p. 5).

Plaintiff alleges that although the Trust's Policy, and other similar universal life policies issued by LBL, provided the COI rate would be "based on the insured's sex, issue age, policy year, payment class and face amount," in 2024 LBL sent letters to policyholders stating LBL was increasing their policy's current COI rates based on factors other than those stated above. Instead, LBL stated the need to increase COI rates was due to "higher than anticipated future mortality experience," and the current COI rates were "inadequate to cover the anticipated costs of providing the benefits under the similarly situated policy forms in force." (Filing No. 1 at pp. 2-3). However, Plaintiff alleges "[w]hat is actually happening" is that such rate increases are part of a "desire to extract more profits or induce lapses through the adverse COI change" following LBL's acquisition in 2020 by "private-equity backed Kuvare US Holdings, Inc." (Filing No. 1 at pp. 3-5). Plaintiff alleges these COI rate hikes are unlawful under the terms of the Policy, and alleges a claim for breach of contract on behalf of himself and other similarly situated policy holders. Plaintiff seeks to represent a class of plaintiffs defined as: "All owners of universal life insurance policies (including variable and group universal life policies) issued or assumed by Lincoln Benefit Life Company, or its predecessors-in-interest, that were subjected to any cost of insurance rate increases announced in letters sent to policyholders in or after 2024." (Filing No. 1 at p. 16).

In response to the Complaint, LBL filed a motion to transfer this action to the Northern District of Illinois, or in the alternative, for a More Definite Statement. (Filing No. 28). LBL submitted an Index of Evidence with its motion, including the declarations of Connie Heinrich ("Heinrich"), LBL's Operations Director; Christopher Petillo ("Petillo"), counsel for LBL; Laura Gallagher ("Gallagher"), Chief Actuary for Kuvare US Holdings and its corporate affiliates (including LBL); and Lee Hakert ("Hakert"), an actuary at Kuvare Corporate Management, LLC, and its corporate affiliates. (Filing No. 30). According to LBL's declarations, the Trust's Policy has no transactional connection to Nebraska because the insured lived in Minnesota, the insured signed the insurance application in Minnesota, the policy was issued in Minnesota, and the current trustee lives in and is a citizen of Minnesota. (Filing No. 29 at p. 9). And while LBL acknowledges

it is a Nebraska insurance company, it asserts its presence in Nebraska has "significantly waned," and only nine employees remain in the administrative office in Nebraska. LBL states that "[n]early all" of its executives and officers, including its President/Chief Operating Officer, Chief Actuary, and Chief Risk Officer, live and work in an office located in Rosemont, Illinois. (Filing No. 29 at p. 10; Filing No. 30-1 at ¶ 6-8). LBL's officers have signed regulatory submissions in Illinois. (Filing No. 50 at p. 8). LBL contends a corporate entity's principal place of business is not immutable, and its corporate nerve center is now Illinois. (Filing No. 29 at pp. 7, 14).

LBL asserts the COI rate redetermination at issue was made by executives primarily located in Illinois; no individual involved in the COI rate redetermination lived in Nebraska; and the documents relevant to the COI rate determination are stored in Illinois, although policyholder documents are stored electronically in Connecticut. (Filing No. 29 at pp. 11-12). LBL groups the individuals who worked on the COI rate redetermination into three categories: (1) individuals who serve on LBL's Non-Guaranteed Elements ("NGE") Committee; (2) other personnel who were not on the NGE Committee; and (3) individuals who worked for a third-party actuarial consultant, Willis Towers Watson ("WTW"). LBL states the NGE Committee is responsible for developing and managing NGEs such as the COI rate increases at issue in this case, and the other individuals "merely supported the project to varying degrees." (Filing No. 29 at pp. 11-12). Six of the seven NGE Committee members work and reside in Illinois; the seventh member, Shafiqah Shafie, "is affiliated with the Rosemont, Illinois, office, but works remotely from Minnesota and travels to the Rosemont office at least quarterly." (Filing No. 29 at p. 12). Six non-NGE Committee members also supported the rate redetermination; four were associated with the Rosemont office and lived in Illinois at the time (with one subsequently relocating to Wisconsin); and two individuals lived in Iowa. Five WTW actuaries that assisted with the rate redetermination lived Florida, Illinois, Iowa, New York and Pennsylvania.

LBL states this is the second iteration of a putative class action regarding the same COI rate change at issue in this case; the first was filed by PHT Holding I LP ("PHT") in the Southern District of Iowa on November 26, 2025, but PHT voluntarily dismissed the case after LBL filed a similar motion to transfer or dismiss that action. None of the PHT witnesses have ties to Nebraska. (Filing No. 29 at pp. 9-10). LBL maintains the balance of factors weigh in favor of transfer to the Northern District of Illinois under 28 U.S.C. § 1404(a) because LBL's principal place of business has changed from Nebraska to Illinois, and because the witnesses involved in the COI rate

redetermination, the analysis and approval of the rate redetermination, and documents relevant to this case are all located in Illinois. Plaintiff is located in the Bloomington, Minnesota area, and there is otherwise no significant connection to Nebraska. (Filing No. 29).

Despite LBL's current representations to the contrary, Plaintiff asserts LBL is a Nebraska-domiciled life insurer "with its statutory home office, principal place of business, and primary location of books and records in Lincoln, Nebraska." Plaintiff states LBL has previously represented it is a Nebraska insurer "to federal courts, to the Nebraska Department of Insurance, to the National Association of Insurance Commissioners, and to the Securities and Exchange Commission" both before and after the COI rate increase at issue. (Filing No. 48 at p. 7). Plaintiff also points out that, despite LBL's statement that the insurance policy at issue "does not have any apparent connection to Nebraska," the Policy reflects it was executed for LBL "at its home office in Lincoln, Nebraska" and that cancellation of the policy may be made by sending notice to LBL in Lincoln, Nebraska. (Filing No. 48 at pp. 7-8; Filing No. 30-2 at p. 2).

After LBL filed its motion to transfer, Plaintiff notified LBL of his intent to pursue venue discovery, including requests for document production ("RFPs"), requests for admission ("RFAs"), and requests to depose Gallagher and Heinrich for up to two hours each. (Filing No. 49-8; Filing No. 49-9). LBL took the position that Plaintiff does not have a right to conduct discovery to respond to a motion to transfer and that such discovery is unnecessary in this case; nevertheless, counsel for the parties "reached agreement on the RFAs and the first RFP." (Filing No. 50 at p. 1). LBL offered to disclose additional information, including whether its board or the NGE Committee conducted any business in person, and if so, where, as well as additional identification of LBL's Directors and those who work in the Nebraska office on behalf of LBL.[1] The parties also agreed to allow the depositions of Gallagher and Heinrich. (Filing No. 50 at p. 10; Filing No. 51-2; Filing No. 51-3). However, the parties could not resolve their disputes regarding the scope and length of Gallagher's and Heinrich's depositions. LBL also maintained its position RFP Nos. 2 through 5 are overbroad. These requests ask for production as follows:

> RFP No. 2: All board minutes or board memos CONCERNING the COI INCREASE, INCLUDING any cover letter, email or other DOCUMENT showing who authored it and who it was sent to.

[1] LBL asserts it had already disclosed the number of individuals in Nebraska office and explained that nobody in Nebraska was involved in assessing or approving the COI rates at issue. (Filing No. 50 at p. 10; Filing No. 51-2; Filing No. 49-10).

> RFP No. 3: ANY redetermination memo, analysis, report, or similar DOCUMENT presented to or prepared by LBL's Non-Guaranteed Elements Committee CONCERNING the COI INCREASE, INCLUDING any cover letter, email, or other document showing who authored it and who it was sent to.
>
> RFP No. 4: Calendar entries or other DOCUMENTS sufficient to show the location of all meetings of LBL's Non-Guaranteed Elements Committee CONCERNING the COI INCREASE, including whether such meetings were held in person, via videoconference, or via telephone.
>
> RFP No. 5: DOCUMENTS sufficient to show the LBL employees (whether current or former) that originally priced the SUBJECT POLICIES.

(Filing No. 49-8).

Plaintiff takes issue with LBL's refusal to produce the entire "redetermination memorandum" that describes the documents and other data LBL relied upon in connection with the COI rate increase. (Filing No. 48 at pp. 8-9). Plaintiff also asserts LBL "refuses to produce documents sufficient to show the names of the individuals who priced the policies at issue, even though the original pricing assumptions will be a central issue[.]" (Filing No. 48 at p. 9). Counsel for the parties contacted the undersigned magistrate judge requesting guidance on how to resolve their dispute regarding Plaintiff's request to conduct formal venue-related discovery. (Filing No. 41).

The Court held a telephone conference on the dispute on July 9, 2026. (Filing Nos. 45-46). During the telephone conference, LBL maintained its position that Plaintiff does not have a right to discovery to respond to a motion to transfer, and that any such discovery should be limited to the motion to transfer venue issue and not encompass the merits of the case. Nevertheless, LBL agreed to provide responses to RFAs and to provide information regarding the office location of officers and benefits officers, and board members in Nebraska. LBL also agreed to limited depositions of Gallagher and Heinrich. However, the parties continued to disagree on the scope of such discovery and depositions, including LBL's position that it would redact merits or substantive information from the redetermination memo in response to RFP #3. (See generally, Filing No. 46). The Court ordered the parties to engage in further discussions and, if necessary, for Plaintiff to file an appropriate discovery motion regarding any outstanding disputes. (Filing No. 45).

Following the teleconference, LBL objected and responded to RFAs, (Filing No. 51-2), and on July 23, 2026, provided its position on what information it was willing or not willing to provide

in response to RFP Nos. 2 through 5. (Filing No. 51-3). Plaintiff's instant motion to compel followed. Plaintiff asks the Court to (1) compel LBL to produce "any redetermination memoranda, analyses, reports or similar documents presented to or prepared by LBL's Non-Guaranteed Elements Committee or Board concerning the cost of insurance rate increase," (2) documents sufficient to show the employees who prepared the original pricing materials for the subject policies, (c) compel LBL to make its witnesses Laura Gallagher and Connie Heinrich available for 2-hour depositions on all topics relevant to the transfer motion, and (d) order that LBL cannot instruct the witnesses not to answer for relevance, scope, or any reason other than to protect privilege.

## DISCUSSION

It is important to restate the context in which Plaintiff has made his request for discovery: Plaintiff has filed a class action complaint against LBL for breach of contract arising out of LBL's COI rate increase, which Plaintiff maintains was a breach of the terms of the Trust's life insurance Policy and other similar policies issued by LBL. In response to the Complaint, LBL has filed a motion to transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a). LBL does not contend Nebraska is an improper forum—it just contends the Northern District of Illinois is a more convenient forum.

Section 1404(a) permits a court to transfer a civil action to another district "where it might have been brought" for the convenience of parties and witnesses, in the interest of justice. 28 U.S.C. § 1404(a). Factors the court can consider when balancing the convenience of the parties and witnesses include witnesses' willingness to appear, the ability to subpoena witnesses, adequacy of deposition testimony, accessibility to records and documents, the location where the conduct complained of occurred, and the applicability of each forum state's substantive law. *See In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010). Factors the court can consider when considering the interest of justice include judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law. *See id.* Transfer under § 1404(a) is intended to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

At this stage of the proceedings, the Court must only determine whether LBL has met its burden to show the Northern District of Illinois is a more convenient forum than Nebraska to litigate this breach of contract action when assessing the above factors. *See In re Apple, Inc.*, 602 F.3d at 913 ("[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."). LBL offered sworn declarations and certain documents, including a copy of the Trust's Policy and LBL's annual statements to the National Association of Insurance Commissioners, in support of its motion to transfer. (Filing No. 30). Through these sworn declarations, LBL has identified (1) the names, offices, and home states of all NGE Committee members, who LBL asserts were the decision-makers responsible for the rate redetermination; (2) the names, duties, roles, offices, and home states of all non-NGE Committee individuals who assisted in the rate redetermination; (3) the names, positions, and assigned office locations of LBL's Directors; and (4) the names, roles, offices, and home states of the Willis Towers Watson actuarial consultants involved in the Rate Redetermination. LBL has also identified where documents relevant to the COI rate determination and policyholders are located, described whether the LBL board and NGE Committee met in person when discussing the rate redetermination, and identified the locations of in-person meetings.

Plaintiff nevertheless contends that more discovery is required to gain "an understanding of the documents LBL relied upon in connection with the rate increase and the analysis it performed frames which witnesses and documents, and their locations, are relevant to the dispute and the transfer motion is relevant to the dispute and the transfer motion." (Filing No. 41). Plaintiff requests board minutes or board memos concerning the COI increase including cover letters, emails, or documents showing authors and recipients; the redetermination memo, analysis, report, or similar documents presented by LBL to the NGE Committee concerning the COI increase, including cover letters, emails, or documents showing authors and recipients; calendar entries or documents showing the location of all meetings of the NGE Committee concerning the COI increase; and documents to show the LBL employees that originally priced the subject policies.

Generally, district courts have broad discretion in determining whether to grant limited discovery to explore jurisdictional or venue facts. *See Green Source Holdings, LLC v. Ingevity Corp.*, No. 1:18-CV-1067, 2019 WL 1995402, at *5 (W.D. Ark. May 6, 2019). However, when a party offers only "speculation or conclusory assertions" regarding the need for such discovery, a

court may utilize its discretion in denying discovery on the matter. *Garavaglia v. Brazilian Pros., LLC*, No. 25-00014-CV-W-LMC, 2025 WL 447715, at *1 (W.D. Mo. Jan. 16, 2025) (quoting *Raridon & Assocs. Orthopedics, Inc. v. Schmidt*, 2023 WL 1489905, at *5 (S.D. Iowa Jan. 24, 2023)); *see also Curators of Univ. of Missouri v. Corizon Health, Inc.*, 627 F. Supp. 3d 1030, 1040 (W.D. Mo. 2022) (stating a court may deny jurisdictional discovery where the party seeking discovery "offers only speculation about what discovery will produce."). "Although discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted . . . [courts] need not permit even limited [venue] discovery" when a party requests discovery based only on "bare allegations" and "conclusory assertions," and "in spite of and against" the opposing party's sworn declaration. *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 874 (E.D. Va. 2013) (denying request for limited venue discovery to resist a motion to transfer under § 1404(a) where the request "amounts to nothing more than an attempt to unearth facts contrary to those sworn facts presented to the Court.").

Here, LBL has already identified names, offices, locations, roles, positions of the NGE Committee individuals, non-NGE Committee individuals, and the WTW actuarial consultants involved in the COI redetermination at issue in this case. LBL has also explained where documents are located, described whether the LBL board and NGE Committee met in person when discussing the rate redetermination, and identified the locations of in-person meetings. While Plaintiff is skeptical of LBL's claim that its presence in Nebraska has "significantly waned" in recent years, Plaintiff does not indicate any specific facts relevant to the factors the Court must consider under § 1404(a) he believes he would uncover through his broad written discovery requests—many of which do overlap with the merits—that would allow him to rebut LBL's declarations. Plaintiff will have an opportunity to conduct discovery at a later date. But the only issue before the Court now is whether that discovery and the remainder of the case is more conveniently conducted in Nebraska or in the Northern District of Illinois. *See Va. Innovation Scis.*, 928 F. Supp. 2d 863, 874. As such, the Court will not compel LBL to further respond to Plaintiff's written discovery requests.

However, because LBL agreed that Plaintiff can depose Gallagher and Heinrich, the Court will permit those depositions to proceed. Such depositions will be limited to 2-hours and strictly limited to questions eliciting the connections, if any, Nebraska has to Plaintiff's breach of contract claim, including the locations of party and non-party witnesses, documents, and other evidence because the purpose of this discovery is to determine whether Nebraska or the Northern District of

Illinois is the most convenient forum to litigate the merits of this action. *See Rare Breed Triggers, LLC v. Garland*, 639 F. Supp. 3d 903, 911 (D.N.D. 2022) ("Courts do not permit discovery to establish where alternative venue may lie."). Defendant may object and instruct witnesses not to answer questions requesting information outside that scope. *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer . . . to enforce a limitation ordered by the court[.]"). Upon consideration,

**IT IS ORDERED**:

1. Plaintiff's Motion to Compel Venue Discovery (Filing No. 47) is denied, except as to the previously agreed depositions of Gallagher and Heinrich.
    a. Such depositions will be limited to 2-hours and strictly limited to questions eliciting the connections Nebraska has to Plaintiff's breach of contract claim, including the locations of party and non-party witnesses, documents, and other evidence. Defendant may object and instruct witnesses not to answer questions requesting information outside that scope.
2. Plaintiff shall file a response to Defendant's Motion to Change Venue (Filing No. 28) within 14-days after the depositions are completed.

Dated this 9th day of November, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge